United States District Court
Southern District of Texas
**ENTERED**
February 05, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| JUAN JOSE POLANCO, | § | |
| | § | |
| Petitioner, | § | |
| | § | CIVIL ACTION NO. 7:15-CV-60 |
| VS. | § | |
| | § | |
| WILLIAM STEPHENS, | § | |
| | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION

Petitioner Juan Jose Polanco, a state prisoner proceeding pro se, initiated this action in January 2015 by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1.) In May 2012—more than two and a half years before Petitioner filed this action—he was sentenced to ten years' imprisonment after pleading guilty to an indictment charging him with assaulting a woman on two separate occasions within a 12-month period. In his federal habeas petition, Petitioner asserts several claims that are all based on the premise that his sentence was improperly enhanced by a prior domestic assault for which he had never been convicted. Respondent has moved to dismiss, contending that the petition is time barred, and, in the alternative, that Petitioner's claims lack merit. (Docket No. 11.)

After carefully considering the pleadings in this case, the state court record, and the applicable law, the undersigned concludes that this action should be dismissed. As explained further below, Petitioner filed this federal habeas action over ten months after the applicable one-year limitations period expired, and the circumstances here do not qualify for equitable tolling. Accordingly, it is recommended that Respondent's motion to dismiss be granted and that this action be dismissed as untimely.

# I. BACKGROUND[1]

A.   State Criminal Proceedings

On April 12, 2012, a grand jury in Hidalgo County, Texas, returned an indictment alleging that, on February 19, 2012, Petitioner intentionally caused bodily injury to Alma Reyna, with whom he had a dating relationship. (Docket No. 7-5, at 47.)[2] The indictment further alleged that Petitioner also intentionally caused bodily injury to Ms. Reyna on January 30, 2012, and that Petitioner's two assaults on Ms. Reyna occurred during a period that was 12 months or less in duration. (*Id*.) During the February 19 assault, Petitioner injured Ms. Reyna by striking her with his hand, and he injured her on January 30 by striking her with his hand and/or kicking her.[3] (*Id*.)

On May 14, 2012, Petitioner pleaded guilty to the charge in the indictment. (*Id*. at 49-50.) In doing so, he admitted in writing that he "committed each and every element of every offense alleged in the indictment." (*Id*. at 66.) As part of the admonishments he received in pleading guilty, Petitioner was informed—and acknowledged that he understood—that he was

---

[1] The facts and procedural history set out in the next two sections are taken from the state court record filed in this case, as well as the documents submitted by Petitioner and Respondent. (*See* Docket Nos. 1, 7, 11, 12.)

[2] In this report, the specific page cites to the state court record refer to the page numbers at the top of the pages that are assigned by the electronic docket entry (rather than to the Bates numbers or other numbering found at the bottom of some pages).

[3] The indictment does not provide further detail about Petitioner's assaults on Ms. Reyna. However, Petitioner submitted a report from the Mission Police Department in support of his claims. (Docket No. 12, at 17-21.) Petitioner indicates that this police report documents one of the assaults he committed against Ms. Reyna. The police report reflects that on February 19, 2012, Petitioner brutally assaulted two females—his girlfriend and her daughter. (*Id*. at 20.) The girlfriend/mother was presumably Ms. Reyna (although the victims' names are redacted). Petitioner struck Ms. Reyna in the head several times with his fists. (*Id*.) When Ms. Reyna's daughter intervened to try to protect her, Petitioner threw the daughter to the ground, struck her in the back of the head, and then threatened to kill her while brandishing a knife. (*Id*.) The victims' account of Petitioner's assault was corroborated by another witness who was present during the incident. (*Id*.)

2

pleading guilty to a third degree felony for which he could be imprisoned "not more than 10 yrs or less than 2 years." (*Id*. at 66, 69.)  As part of his written plea agreement, Petitioner agreed to a punishment recommendation that the "Court sentence defendant to 10 years in the Institutional Division of the Texas Department of Criminal Justice."[4]  (*Id*. at 71.)  In signing his plea agreement, Petitioner specifically acknowledged (among other things) that he was agreeing to a punishment recommendation of ten years' imprisonment.  (*Id*. at 71-72.)

Consistent with the punishment recommendation that Petitioner agreed to, the state district court judge sentenced Petitioner to ten years' imprisonment.  (*Id*. at 49.)  In pleading guilty, Petitioner also waived his right to appeal his conviction.  (*Id*. at 70.)  Consistent with that waiver, he did not file an appeal.

**B.     State Habeas Application**

Over a year and a half later, on December 18, 2013, Petitioner filed a state application for writ of habeas corpus challenging his conviction.[5]  (Docket No. 7-5, at 5.)  Petitioner asserted three grounds for relief: 1) "Illegal sentence based on an improper enhancement"; 2) "Involuntary guilty plea"; and 3) "Ineffective assistance of counsel."  (Docket No. 7-5, at 10-12.)  All three claims are based on the contention that Petitioner pleaded guilty to a misdemeanor assault charge and that the state court illegally enhanced his sentence by relying on another

---

[4] It seems likely that the State's plea agreement with Petitioner took into account his troubling history of assault charges.  According to a report by the Texas Department of Criminal Justice, prior to Petitioner's conviction that is at issue here, he had twice previously been charged with aggravated assault (in 1996 and 2006).  (Docket No. 7-2, at 1-2.)  He was convicted in both of those prior assault cases.  (*Id*.)

[5] Although his state habeas application was filed on January 13, 2014, Petitioner signed it on December 18, 2013.  Giving Petitioner the benefit of the doubt, that is the earliest possible date that it could be considered filed.  *See Richards v. Thaler*, 710 F.3d 573, 578 (5th Cir. 2013) ("under Texas law the pleadings of *pro se* inmates, including petitions for state post-conviction relief, are deemed filed at the time they are delivered to prison authorities").  Petitioner later re-filed his state application on May 19, 2014, using a corrected form.  This later filing is not relevant to the issues here.

assault for which he was "never charged." (*Id*.) Petitioner contends that this error violated his due process rights, rendered his plea involuntary, and constituted ineffective assistance of counsel (for negotiating an illegal plea bargain).

The same state district court judge who accepted Petitioner's guilty plea and entered judgment also considered his state habeas application. On July 3, 2014, the presiding state district court judge entered findings of fact and conclusions of law recommending that Petitioner's application be denied. (*Id*. at 76-79.). Based on the "findings of [the] trial court," the Texas Court of Criminal Appeals denied Petitioner's state habeas application "without written order," on August 20, 2014. (*Id*. at 4.) Petitioner signed a motion for reconsideration on August 28, 2014, and the Court of Criminal Appeals denied that motion on September 5, 2014. (Docket No. 7-4, at 1-4.)

C.     **Federal Habeas Claims**

Four months later, on January 22, 2015, Petitioner signed his federal petitioner for writ of habeas corpus.[6] (Docket No. 1.) He alleges the same three grounds for relief that he asserted in his state habeas application.

In moving for summary judgment, Respondent contends that Petitioner's federal petition is time barred and that he is not entitled to equitable tolling. (Docket No. 11, at 5-10.) Alternatively, Respondent thoroughly addresses the merits of Petitioner's claims, arguing that they lack merit under the appropriate standard of review. (*Id*. at 10-23.)

---

[6] Petitioner's federal habeas petition is considered filed on the date that he placed it in the prison mailing system. *See Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998) ("[A] habeas corpus petition should be deemed filed when the petition is handed over to prison authorities for mailing."). It will be assumed, as Petitioner certifies, that he placed the petition in the prison mailing system on the same day that he signed it, so it will be considered filed as of January 22, 2015. (*See* Docket No. 1, at 10.) It was docketed by the Clerk on February 10, 2015.

4

Petitioner filed an opposition to Respondent's motion to dismiss. (Docket No. 12.) Petitioner provides additional argument in support of his contention that his sentence was improperly enhanced. (*Id*. at 2-8.) As to the limitations issue, he argues that the one-year time bar is not applicable to him and that, if it is, he is entitled to equitable tolling. (*Id*. at 8-10.)

## II. ANALYSIS

Petitions for habeas corpus relief filed in federal court after April 24, 1996, are subject to review under the amendments to the federal habeas corpus statutes as set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254; *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA established a one-year period for filing habeas corpus petitions by persons in custody pursuant to the judgment of a state court. 28 U.S.C. § 2244(d)(1).[7] In most cases, the one-year period of limitation runs from the "date on which the

---

[7] The full text of the AEDPA limitations provision reads as follows:
(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A).

Judgment was entered in Petitioner's case on May 14, 2012, and he had until June 13, 2012, to timely file a direct appeal. *See* TEX. R. APP. P. 26.2(a)(1) (notice of appeal timely filed 30 days after the entry of sentence). As Respondent points out, because Petitioner did not file a direct appeal, his conviction became final by June 13, 2012, at the latest.

The AEDPA limitations period expired one year later on June 13, 2013.[8] However, Petitioner did not file his federal habeas petition until January 22, 2015, and it is thus untimely unless the limitations period was tolled. The possibility of both statutory and equitable tolling will be considered.

**A.   Statutory Tolling**

Section 2244(d)(2) provides that the one-year limitations period is tolled during the time in which "a properly filed application for State post-conviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2). Here, Petitioner filed a state habeas application on December 18, 2013. But by then the federal limitations period had already expired six months earlier (on June 13, 2013). Petitioner's state habeas application cannot toll the one-year limitations period because it had already expired before that proceeding began.[9] *Scott v. Johnson*, 227 F.3d 260,

---

28 U.S.C.A. § 2244(d).

[8] In his reply brief, Petitioner contends that the AEDPA "one year time bar is not applicable" in his case. (Docket No. 12, at 9.) The basis for this assertion is not entirely clear, although Petitioner seems to suggest that it has something to do with "void judgements." (*Id.*) What is clear, however, is that the AEDPA limitations period applies in Petitioner's case, just as it does in the case of every other state prisoner who seeks federal habeas relief.

[9] It should also be noted that after the Texas Court of Criminal Appeals denied Petitioner's motion to reconsider the denial of his state application (on September 5, 2014), Petitioner waited over four months to file his federal petition (on January 22, 2015). Not including the time in

6

263 (5th Cir. 2000) (holding that the "state habeas application did not toll the limitation period under § 2244(d)(2) because it was not filed until after the period of limitation had expired").

No other statutory tolling provision would apply under the circumstances here. Put simply, there is no statutory basis for tolling the AEDPA limitations period in this case.

**B.     Equitable Tolling**

Because the one-year AEDPA limitations period is not jurisdictional, there is the possibility that it may be equitably tolled. *Holland v. Florida*, 560 U.S. 631, 649 (2010); *Manning v. Epps*, 688 F.3d 177, 183 (5th Cir. 2012). "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649. In *Holland*, the Supreme Court stressed that "the circumstances of a case must be 'extraordinary' before equitable tolling can be applied," and that this determination is "made on a case-by-case basis." *Id.* at 650, 652. The Fifth Circuit has explained that "equitable tolling is warranted only in 'situations where the plaintiff is actively misled by the defendant ... or is prevented in some extraordinary way from asserting his rights.'" *Jones v. Stephens*, 541 F. App'x 499, 503 (5th Cir. 2013) (quoting *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002)).

In arguing that equitable tolling should be applied in this case, Petitioner points to three circumstances that he claims prevented him from filing his habeas petition sooner.[10] (Docket No. 12, at 10-11.) First, Petitioner states that while he was being held at the Hidalgo County Jail (presumably while he was awaiting transfer to a prison facility), he made "several" requests to

---

which his state application was pending, Petitioner filed his federal habeas petition more than ten months after the one-year limitations period expired.

[10] Petitioner does not suggest that his petition was untimely because Respondent "actively misled" him, nor could he. *See Jones*, 541 F. App'x at 503. There is no indication in the record that Respondent (or any other state official) actively misled Petitioner with regard to the filing of his petition.

7

use the law library that were not answered and that, when he was brought to the law library, he remained shackled except that one hand was un-cuffed, so that he had to do his research one handed. Second, after he was transferred to a regular prison (on June 13, 2012), he was placed in administrative segregation. Petitioner states that it is "very difficult to do any research" while in administrative segregation because he was allowed only three law books at a time. Third, Petitioner wrote several times to his attorney requesting "his Attorney/Client file," but the attorney never responded.

These circumstances, taken either singly or collectively, do not amount to an "extraordinary circumstance" that prevented Petitioner from timely filing his petition. At the time Petitioner was transferred from the Hidalgo County Jail (June 13, 2012), he still had one year remaining on the AEDPA limitations period (which expired June 13, 2013). Petitioner claims that he was in administrative segregation during that one-year period, but he does not suggest that he was denied access to legal materials; rather, he was limited to three books at a time.[11] While performing legal research under such circumstances may have been inconvenient, it does not amount to extraordinary circumstances that prevented Petitioner from timely filing his petition. *See Madis v. Edwards,* 347 F. App'x 106, 108 (5th Cir. 2009) (noting in the context of a prisoner civil rights case that "placement in administrative segregation or solitary confinement is generally not grounds for equitable tolling"); *see also Goosby v. Robertson*, 602 F. App'x 190, 191 (5th Cir. 2015) (citing *Madis* for the proposition that a prisoner's "lack of representation and lack of access to a library are insufficient to toll the limitations period"); *Suggs v. Cain*, No.

---

[11] Based on a letter to the Texas Department of Criminal Justice/Parole Division (attached by Petitioner to his reply brief), Petitioner was placed in administrative segregation based on gang affiliation. (Docket No. 12, at 25.) He was released to the general population after completing a "Gang Renouncement and Disassociation Process," which included classes in anger management and cultural awareness (among others). (*Id*.)

CIV.A. 14-1114, 2015 WL 3952727, at *1 (E.D. La. June 29, 2015) (holding in a § 2254 case that the petitioner's "placement in administrative segregation is not a 'rare or exceptional circumstance'" that would entitle him to equitable tolling).

As to Petitioner's attempts to obtain his "file" from his attorney, Petitioner submits three letters that he claims he sent to his attorney during the one-year limitations period.[12] But Petitioner fails to explain what information he needed from "his Attorney/Client file" in order to timely file his habeas petition. All of Petitioner's claims are based on information that he personally knew and/or that was part of the public record.[13] For example, in the letter to his attorney dated September 9, 2012—which was apparently sent nine months before the limitations period expired—Petitioner wrote: "I don't understand how I could get ten years on assault (first offense)." (Docket No. 12, at 27.) This issue is the basis of all the claims that Petitioner is now asserting.[14] Counsel's alleged failure to answer Petitioner's letters did not prevent him from timely filing the claims in his federal habeas petition.

Under these circumstances, Petitioner has also failed to show that he diligently pursued his rights. Equitable tolling "is not intended for those who sleep on their rights." *Manning*, 688 F.3d at 183 (quoting *Mathis v. Thaler*, 616 F.3d 461, 474 (5th Cir. 2010)). Petitioner not only

---

[12] The hand-written letters are all addressed to "Mr. Tijerina," but none of them include either Mr. Tijerina's address or Petitioner's return address (so that Mr. Tijerina could respond). (Docket No. 12, at 26-28.) In submitting these letters, Petitioner does not include any receipt or other documentation from the prison mail room to confirm that the letters were sent. (*Id*.) For purposes of this report, it will be assumed that the letters were sent.

[13] Petitioner filed his habeas claims even though he never received any response from his attorney. Petitioner does not suggest what counsel could have sent him that would have enabled Petitioner to file his habeas petition any sooner.

[14] As another example, in support of his federal habeas claims, Petitioner submitted a police report, which addresses one of the assaults he committed against Ms. Reyna. (Docket No. 12, at 17-21.) Petitioner obtained a copy of the report from the Mission Police Department; however, he did not request the report until October 14, 2015—which was obviously long after the limitations period expired. (*Id*. at 17.)

filed his state habeas application six months after the federal one-year limitations period expired, he also waited another four months after the denial of that application became final before filing his federal petition. *See supra* n.9.

Because this case presents no extraordinary circumstances and because Petitioner did not act promptly to preserve his rights, equitable tolling does not apply, and Petitioner's federal habeas claims are time barred.[15]

### III.  CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Respondent's Motion for Summary Judgment (Docket No. 11) be GRANTED, that Petitioner's § 2254 habeas petition (Docket No. 1) be DENIED, and that this action be DISMISSED.  For the reasons discussed below, it is further recommended that Petitioner be denied a certificate of appealability.

### CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A).  Although Petitioner has not yet filed a notice of appeal, the recently-amended §

---

[15] Because Petitioner's claims are time barred, the Court need not address the merits of those claims. Nevertheless, it should be noted that, upon review of Petitioner's claims, it is clear that they also lack merit, as discussed in Respondent's briefing.  (*See* Docket No. 11, at 10-23.) Among other defects in Petitioner's federal habeas claims, they are all based on the mistaken premise that he pleaded guilty to a single misdemeanor assault and that his sentence was illegally enhanced by virtue of a second assault that had never been adjudicated.  The record clearly shows that Petitioner admitted in pleading guilty to the indictment that he assaulted Ms. Reyna twice within a 12-month period and that she was a person with whom he had a dating relationship.  Petitioner thus admitted to the elements of the crime of continuous violence against the family, which is a third degree felony under Texas law.  *See* TEX. PENAL CODE ANN. § 25.11(a).  Petitioner's claims would fall far short of meeting the "highly deferential standard for evaluating state-court rulings."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002); *see* 28 U.S.C. § 2254(d).

2254 Rules instruct that the District Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, RULES GOVERNING SECTION 2254 PROCEEDINGS. Because the undersigned recommends the dismissal of Petitioner's § 2254 action, it is necessary to address whether Petitioner is entitled to a certificate of appealability (COA).

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a COA as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); s*ee also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* standard to a COA determination in the context of a habeas corpus proceeding). An applicant may also satisfy this standard by showing that "jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *see also Jones*, 287 F.3d at 329. As to claims that a district court rejects solely on procedural grounds, the prisoner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, Petitioner's § 2254 claims should be dismissed on procedural grounds. For the reasons explained in this report, the undersigned believes that reasonable jurists would not find debatable the conclusion that all of Petitioner's claims are barred by the AEDPA one-year limitations period. Accordingly, Petitioner is not entitled to a COA.

## NOTICE TO THE PARTIES

The Clerk shall send copies of this Report and Recommendation to Petitioner and counsel for Respondent, who have fourteen (14) days after receipt thereof to file written objections pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in this Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

DONE at McAllen, Texas on February 4, 2016.

_____
Peter E. Ormsby
United States Magistrate Judge